

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

## No. 08-25-00194-CV

---

In re Roberto Renato Gardea Ruiz; International Pecans Limited Liability Co. d/b/a West Texas Pecans, Fink Real Estate, LLC; Fink Development, LLC; Fink Home Builders, LLC; Fink Sky, LLC; and Westside Financial, LLC, Relators

---

## AN ORIGINAL PROCEEDING IN MANDAMUS

---

## MEMORANDUM OPINION

This is a petition for writ of mandamus from the denial of a combined plea to the jurisdiction and motion to dismiss filed by Relators Roberto Renato Gardea Ruiz; International Pecans Limited Liability Co. d/b/a West Texas Pecans; Fink Real Estate, LLC; Fink Development, LLC; Fink Home Builders, LLC; Fink Sky, LLC; and Westside Financial, LLC, (collectively, Relators), in a lawsuit filed by Real Party in Interest Alterna Capital Services, LLC (Alterna America). Alterna America contends the trial court erred in denying its combined plea to the jurisdiction and motion to dismiss on forum-selection clause grounds. We conditionally grant the petition for writ of mandamus.

# I. BACKGROUND

Gardea Ruiz is the corporate representative and shareholder of Nueces Fink, S.A. de C.V. (Nueces Fink), a Mexican corporation domiciled in Delicias, Chihuahua. Alterna America is the American corporate assignee[1] of Alterna Capital, S.A. de C.V., SOFOM, E.N.R., (Alterna Mexico), a Mexican corporation.

On August 22, 2022, the parties signed a "Current Account Credit Facility Agreement" (the Agreement). The Agreement stated that Alterna Mexico was to provide a line of credit with a principal amount of $1 million USD to Nueces Fink. Alterna Mexico was listed as "Lender"; Nueces Fink was listed as "'Borrower' represented herein by its legal representative Roberto Renato Gardea Ruiz"; and Gardea Ruiz was listed as "'Joint and Several Obligor,' acting on his own behalf." The Agreement stated that the funds "shall be guaranteed by the execution of a Promissory Note," and that the parties "agree that the Promissory Note(s) shall not be an indispensable additional requirement to establish an executive commercial trial for the determination of the balance owed by the borrower[.]" Section 3.12 of the Agreement also limited Nueces Fink's use of the credited funds "for working capital (payment of suppliers, operating expenses and corporate expenses)." The Agreement contained a forum-selection clause, providing that "for the correct construction or execution of the Credit Facility Documents," the parties are to "submit to the jurisdiction and competence of the Courts located in the city of Monterrey, Nuevo León[.]"

---

[1] It is undisputed that Alterna America is the assignee of Alterna Mexico and that its rights under the Agreement are enforceable. Section 8.07 of the Agreement provides:

> Enforceability: Assignment. This Agreement shall be effective as of the date set forth in the preamble hereto and shall thereafter be binding upon all parties hereto and their successors or assigns; provided, however, that the Borrower may not assign its rights or obligations under this Agreement without the prior written consent of the Lender, which consent shall be given 30 (thirty) calendar days in advance.

The same day the Agreement was executed, the parties executed an extension to the line of credit via a promissory note for $1 million USD (First Promissory Note) payable on demand to Alterna Mexico on behalf of Nueces Fink. The First Promissory Note contained a forum-selection clause providing that "[f]or the resolution of any dispute arising from the construction, performance or enforcement of this promissory note, it shall be interpreted in accordance with the laws in force in the United Mexican States and the Courts of the City of Monterrey, Nuevo León shall have jurisdiction[.]" On November 15, 2023, a second promissory note extending the line of credit in the amount of $2 million USD was executed by the parties (Second Promissory Note). The Second Promissory Note contained the same forum-selection clause as the First Promissory Note. On December 27, 2023, the parties executed a third promissory note (Third Promissory Note) extending the line of credit for an additional $2 million USD. The Third Promissory Note contained a similar forum-selection clause as the First and Second Promissory Notes, providing that "[t]o settle any dispute arising from the construance,[2] performance or enforcement order hereof, shall be interpreted pursuant to the effective laws of the United Mexican States and the Courts of the City of Monterrey, Nuevo Leon shall be competent, jurisdiction and venue of which the parties expressly submit to[.]" Nueces Fink and Gardea Ruiz borrowed a total of $5 million USD from Alterna Mexico.

When "issue[s] of repayment" arose, Alterna America, as assignee of Alterna Mexico, initiated suit against Gardea Ruiz, Brenda Yadith Fontes Gomez (Gardea Ruiz's wife), and International Pecans Limited Liability Co., d/b/a West Texas Pecans, Fink Real Estate, LLC, Fink

---

[2] The agreements were originally executed in Spanish and were translated for this appeal.

Development, LLC, Fink Home Builders LLC, Fink Sky LLC, and Westside Financial, LLC (the LLC Defendants).[3] This suit was filed in the 41st District Court of El Paso County, Texas.

Alterna America alleged that "the line of credit" entered into by the Agreement and the Promissory Notes "was intended to cover short-term debt of Nueces Fink, a company which bought, processed, and sold pecans." In March 2024, Gardea Ruiz began requesting longer terms of repayment and the balance "rapidly increased to reach the $5 million" USD cap of the line of credit. "After April 11, 2014, Nueces Fink ceased making payments . . . and Gardea Ruiz sought to delay collection efforts several times . . . and ceased communicating with Alterna Mexico once the debt was due and he ran out of delay tactics." According to Alterna America, "[n]either Nueces Fink nor Defendant Gardea have, to date, made a single payment on any of these obligations to either Alterna Mexico or Alterna Texas." The petition also specifically alleged that Gardea Ruiz's wife, Fontes, established a "sham corporation," International Pecans Limited Liability Co. d/b/a West Texas Pecans (West Texas Pecans) "to perpetrate fraud . . . to disguis[e] transactions . . . for the purpose of moving money that was owed to Alterna Mexico from Nueces Fink, and hiding it from Alterna Mexico." Further, Alterna America alleged Gardea Ruiz, "[i]n an effort to prevent Alterna Mexico from collecting the funds it was due . . . [then] began to make Nueces Fink insolvent[,]" and transferred the funds "owed to Alterna Mexico out of Nueces Fink by making large money payments from Nueces Fink to the [West] Texas Pecans bank account opened by [Fontes] shortly before the money was moved." Those transferred funds were then moved through a series of large wire transfers from the West Texas Pecans bank account to four El Paso, Texas bank accounts belonging to the LLC Defendants, each owned and managed by Gardea Ruiz, which

---

[3] Nueces Fink was not named as a defendant in the suit and is not a party to this appeal.

"stripped Nueces Fink of substantially all of its unencumbered assets." "[W]ith the funds that were due to Alterna Mexico," Gardea Ruiz then purchased real estate in El Paso.

Alterna America brought suit on guaranty under the terms of the Agreement and the outstanding sums on the Promissory Notes against Gardea Ruiz; violation of the Texas Uniform Fraudulent Transfer Act (TUFTA) and conspiracy to violate TUFTA against Gardea Ruiz, Fontes, and the LLC Defendants; common law fraud and conspiracy to commit fraud against Gardea Ruiz; and fraud in the inducement and conspiracy to commit fraud in the inducement against Gardea Ruiz.

Relators filed a combined plea to the jurisdiction and motion to dismiss arguing that Alterna America's claims were subject to the unambiguous forum-selection clauses contained in the Agreement and the Promissory Notes. Alterna America filed a response opposing the motion. It asserted that a forum-selection clause does not deprive a court of jurisdiction; the Agreement's forum-selection clause covered only disputes "for the correct construction or execution of the Credit Facility Documents"; the Agreement's forum-selection clause required only the borrower to waive objections to venue or jurisdiction, leaving Alterna America free to choose the venue; only Gardea Ruiz could enforce the forum-selection clause; the clause did not apply to the TUFTA claim; and enforcement of the clause would be unjust, conflict with Texas public policy, and impose a serious inconvenience on Alterna America. The trial court held a hearing on Relators' motion on April 9, 2025, and signed the order denying it on April 10, 2025. This petition for writ of mandamus followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Mandamus is an extraordinary remedy granted only when the relator shows: (1) the trial court committed a clear abuse of discretion; and (2) no adequate appellate remedy exists. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). The burden is

5

on the relator to show entitlement to mandamus relief. *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam). The Texas Supreme Court has held that a trial court that improperly refuses to enforce forum-selection clauses has clearly abused its discretion and, in such cases, no adequate remedy by appeal exists. *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (orig. proceeding) (per curiam). "Thus, mandamus relief is available to enforce an unambiguous forum-selection clause." *In re Longoria*, 470 S.W.3d 616, 625 (Tex. App.—Houston [14 Dist.] 2015, orig. proceeding).

"The proper procedural mechanism for enforcing a valid forum-selection clause that a party to the agreement has violated in filing suit is a motion to dismiss." *Lujan v. Alorica*, 445 S.W.3d 443, 447 (Tex. App.—El Paso 2014, no pet.). We review a trial court's ruling on a motion to dismiss based on a forum-selection clause for an abuse of discretion. *Gespa Nicaragua, S.A. v. Recom AG*, 705 S.W.3d 362, 385 (Tex. App.—El Paso 2024, pet. denied). To the extent our review involves contract construction or interpretation, we review the legal matter de novo. *Id*. In doing so, we interpret unambiguous clauses by their plain language under principles of contract interpretation. *Id*.

Forum-selection clauses enable parties to contractually preselect the jurisdiction for dispute resolution. *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 436 (Tex. 2017). The Texas Supreme Court has recognized that forum-selection clauses are generally enforceable and presumptively valid. *In re Laibe Corp.*, 307 S.W.3d at 316. Forum-selection clauses are also subject to public-policy constraints. *Id*. In resolving disputes regarding whether a claim falls within the scope of the forum-selection clause and who may be bound to it, courts may seek guidance from federal law and may draw analogies to arbitration case law, as arbitration clauses are

6

generally recognized as "a specialized kind of forum-selection clause." *Pinto Tech. Ventures*, 526 S.W.3d at 437.

A party pursuing dismissal and seeking enforcement of a forum-selection clause bears the initial burden of establishing: (1) the existence of a valid agreement to an exclusive forum; and (2) the agreement applies to the claims involved. *Lujan*, 445 S.W.3d at 448. Additionally, a party seeking to enforce a forum-selection clause against a nonsignatory must prove the theory upon which it relies to bind the nonsignatory to the contract. *Id*. If the party pursuing dismissal successfully makes these showings, the burden shifts to the party opposing enforcement to show that the trial court's refusal to enforce the forum-selection clause would be permissible. *In re ADM Inv. Servs., Inc.*, 304 S.W.3d 371, 375 (Tex. 2010) (orig. proceeding). A trial court abuses its discretion unless the party opposing enforcement can clearly show: "(1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial." *Id.* "The burden of proof is heavy for the party challenging enforcement." *Id.* at 375.

## III. ANALYSIS

### A. The claims fall within the scope of the forum-selection clauses.

In its sole issue, Relators seek mandamus relief, asserting the trial court abused its discretion by failing to enforce the forum-selection clauses in the Promissory Notes. The party seeking enforcement of a forum-selection clause must establish: (1) the existence of a valid agreement to an exclusive forum; and (2) the agreement applies to the claims involved. *Lujan*, 445 S.W.3d at 448. The parties do not dispute that the Agreement and Promissory Notes are valid instruments that contain forum-selection clauses. Rather, the inquiry is whether Alterna America's claims fall within the scope of the clauses.

We note first that four forum-selection clauses exist—one in the Agreement, and one in each of the three nearly identical promissory notes (the Promissory Notes). Alterna Texas argues that because the Agreement is "the master agreement that controlled the lending relationship between Alterna Mexico, Nueces Fink, and Gardea Ruiz," the Agreement's forum-selection clause is controlling and supersedes the Promissory Notes' forum-selection clauses. We disagree and consider all four clauses. As a general rule of contracts, we construe documents together when they pertain to the same transaction. *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981); *see also Board of Comm'rs v. Great So. Life Ins. Co.*, 239 S.W.2d 803, 809 (Tex. 1951) ("It is a generally accepted rule of contracts that 'Where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other.'"); *see also Pinto Tech. Ventures*, 526 S.W.3d at 443 ("We interpret contracts to 'harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'").

The Agreement's forum-selection clause provides:

> Applicable Law and Jurisdiction: The Parties declare that, *for the correct construction or execution of the Credit Facility Documents*, they submit to the jurisdiction and competence of the Courts located in the city of Monterrey, Nuevo León, waiving any other jurisdiction or competence that may correspond to them by virtue of their present or future domicile or for any other reason. *The Borrower hereby waives any objection it may now or hereafter have to the venue or jurisdiction in which any suit, action or proceeding relating to this Agreement or the Promissory Note(s) may be brought in accordance with the provisions of this Section*.

The scope of the Agreement's forum-selection clause is explicitly limited to disputes involving "the correct construction or execution of the Credit Facility Documents," and the parties agree that Alterna America's claims do not involve those issues.[4] Because the clause does not control Alterna

---

[4] Relators argue that "[t]he first sentence of the forum selection clause in the [Agreement] dictates that it only applies to disputes involving the 'correct construction or execution of the Credit Facility Documents.'" Alterna America

America's claims, its waiver-of-venue provision also does not preclude Relators from objecting to venue or jurisdiction.

Relators maintain that the Promissory Notes' forum-selection clauses "contain valid forum selection clauses that provide for the exclusive jurisdiction and venue in the Courts of Monterrey, Mexico" "for any claims that fall within the provisions of the Forum Selection Clauses."

We turn to determine whether Alterna America's claims fall within the scope of the Promissory Notes' forum-selection clauses. In examining whether claims brought by a plaintiff fall within the scope of a forum-selection clause, a court should engage in a "common-sense examination of the claims and the forum-selection clause to determine if the clause covers the claims." *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 884 (Tex. 2010) (orig. proceeding) (per curiam). "The court bases its determination on the language of the clause and the nature of the claims purportedly subject to the forum-selection clause." *In re Longoria*, 470 S.W.3d at 625. "In construing a contract, we must ascertain and give effect to the parties' intentions as expressed in the writing itself." *Id.* (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)). "If a contract is worded so that it can be given a certain or definite meaning then it is unambiguous, and the court will construe it as a matter of law." *Id.* (citing *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012)).

Relators contend that "all of Alterna [America's] causes of action are based solely upon the alleged assignment of the Mexican Promissory Notes and all of its damages stem from the alleged failure of Nueces Fink and Gardea to make payment on the Mexican Promissory Notes and the guaranties contained therein." We agree and find that the claims fall within the scope of the Promissory Notes' forum-selection clauses, as the claims arose from the contractual relationship

concedes, stating: "Alterna agrees that this is not a dispute involving the 'correct construction or execution' of the Line of Credit Agreement."

9

and implicated the terms of the Agreement and the Promissory Notes. Alterna America pleaded the following as to each claim:

<u>Suit on guaranty</u>

- Gardea Ruiz personally guaranteed the funds advanced pursuant to the line of credit as well as the Promissory Notes subject of this lawsuit. Under the terms of the Agreement and under the applicable Mexican law, Alterna America is not required to sue Nueces Fink under these agreements, but may enforce its contractual rights solely and directly against Gardea Ruiz. Alterna America requests judgment against Gardea Ruiz, personally, for the following alleged outstanding sums due:

  o Note dated August 22, 2022: $1 million USD plus interest.

  o Note dated November 15, 2023: $2 million USD plus interest.

  o Note dated December 22, 2023: $2 million USD plus interest.

This claim seeks judgment for the outstanding dues owed under the agreements and seeks enforcement of the outstanding sums due under the Promissory Notes. This claim falls squarely within a dispute "arising from the [construction/construance], performance or enforcement" of the Promissory Notes and encompasses the scope of the Promissory Notes' forum-selection clauses. Because this claim falls within the Promissory Notes' forum-selection clauses, suit in El Paso was precluded for this claim against Gardea Ruiz.[5]

We turn to the remaining claims, which Alterna America asserts do not apply to the forum-selection clauses and therefore could not form a basis for dismissal.

---

[5] It is undisputed that Gardea Ruiz was a signatory to the Agreement and the Promissory Notes.

TUFTA and Conspiracy to Violate TUFTA

- The transfer of funds from Nueces Fink to Texas Pecans and from Texas Pecans to the LLC Defendants under Gardea Ruiz's control violated the TUFTA.

- These transfers constituted actual and constructive fraud because they were made with the intent to hinder, delay, or defraud its creditors "without receiving reasonably equivalent value in exchange for the transfers, at a time when Nueces Fink was engaged in a business for which its remaining assets were unreasonably small in relation to the business; and at a time when it intended to incur debts beyond its ability to pay as they came due."

- At the time Gardea Ruiz and Fontes made the transfers: the transfers rendered Nueces Fink insolvent, the transferees were insiders, Gardea Ruiz retained control of the property afterwards, the acts were concealed or the property was concealed by Gardea Ruiz, the debtor had been sued or threatened with suit beforehand, the transfers were substantially all of Nueces Fink's assets, Gardea Ruiz was absconded, the transfers were made without Alterna Mexico receiving reasonably equivalent value, Nueces Fink became insolvent as a result of the transfers, and the transfers occurred shortly after a substantial debt was incurred.

- The transfers were the objects of an agreement between Gardea Ruiz, Fontes, and the LLC Defendants who worked together to commit the fraudulent transfers.

Alterna America requested the trial court to impose against each defendant: avoidance of the transfers, attachment of all assets, injunction against further disposition by the debtor or any transferees, and appointment of a receiver.

Common law fraud and conspiracy to commit fraud

- Gardea knowingly made false representations and concealed from and failed to disclose certain facts to Alterna Mexico. Gardea Ruiz specifically represented to Alterna Mexico that they were borrowing funds in good faith and would use the borrowed funds in the course of legitimate business of Nueces Fink, when Gardea Ruiz never intended to repay those funds, and disbursements made to Nueces Fink were used by Gardea Ruiz for other purposes that were not in the interest of the business of Nueces Fink.

- Gardea Ruiz then concealed from Alterna Mexico his plan to accrue debt to the maximum line of credit, with the intention of then making Nueces Fink insolvent, by moving the funds to other entities in another country.

- Gardea Ruiz had a duty to disclose the facts to Alterna Mexico; the facts were material and false; Gardea Ruiz knew Alterna Mexico was ignorant of the facts and did not have an equal opportunity to discover the facts; Gardea Ruiz intended that Alterna Mexico would rely on those omissions and false representations by failing to disclose the facts and making false representations; Alterna Mexico relied on Gardea Ruiz's nondisclosure and false representations.

- The above-described fraud was the object of an agreement between Gardea Ruiz and Nueces Fink who worked together to commit fraud.

- As a proximate result of Gardea Ruiz's actions, Alterna America alleged it has been damaged.

Fraud in the inducement and conspiracy to commit fraud in the inducement

- Gardea Ruiz made material misrepresentations which induced Alterna Mexico to agree to disburse funds to Nueces Fink. Gardea Ruiz specifically represented to Alterna Mexico

that Nueces Fink would repay the borrowed funds, when Gardea Ruiz actually intended to divest funds from Nueces Fink, leaving it insolvent.

- Gardea Ruiz falsely represented to Alterna Mexico the true financial position of Nueces Fink and falsely represented that the borrowed funds would be used in the course of the business of Nueces Fink.

- Gardea Ruiz knew at the time that the representations were false and that once the maximum amount of funds was borrowed, Nueces Fink and Gardea Ruiz would cease making payments, and Gardea Ruiz would divest funds from Nueces Fink for the purpose of hiding their assets.

- Alterna Mexico relied on the misrepresentations.

- The above-described fraud was the object of an agreement between Gardea Ruiz and Nueces Fink who worked together to commit fraud.

- Based on Gardea Ruiz's misrepresentations, Alterna Mexico agreed to enter into a line of credit agreement, to raise the line of credit to $5 million USD, and to thereafter make disbursements pursuant to the line of credit.

- As a proximate result of Gardea Ruiz's actions, Alterna America alleged it has been damaged.

As the party seeking enforcement of the Promissory Notes' forum-selection clauses, Relators bore the burden of establishing that the clauses apply to the claims involved. *Lujan*, 445 S.W.3d at 448. Relators argue that "Respondent abused her discretion because all of Alterna [America's] claims against the Relators stem from its attempt to enforce the obligations of the Mexican Promissory Notes against the Defendants," and that "[a]lthough couched as torts, all of

13

Alterna [America's] claims against the Relators seek to enforce the payment and performance of the Mexican Promissory Notes."

We begin with the language used in the Promissory Notes' forum-selection clauses. Promissory Notes One and Two contain the following forum-selection clause:

> For the resolution of any dispute arising from the construction, performance or enforcement of this promissory note, it shall be interpreted in accordance with the laws in force in the United Mexican States and the Courts of the City of Monterrey, Nuevo León shall have jurisdiction, to whose jurisdiction and competence the Parties expressly submit themselves, waiving any other jurisdiction that might correspond to them by virtue of their present or future domicile.

The forum-selection clause in Promissory Note Three states:

> To settle any dispute arising from the construance, performance or enforcement order hereof, shall be interpreted pursuant to the effective laws of the United Mexican States and the Courts of the City of Monterrey, Nuevo Leon shall be competent, jurisdiction and venue of which the Parties expressly submit to, waiving any other venue that could correspond to the them [sic] by reason of their current or future domicile.

The parties agreed to resolve "any dispute arising from the [construction/construance], performance, or enforcement" of the Promissory Notes in Mexico. The Court has held that the phrase "arising out of" has "broad[] significance." *Pinto Tech. Ventures*, 526 S.W.3d at 437. "When a forum-selection clause encompasses all 'disputes,' 'arising out of' the agreement, instead of 'claims,' its scope is necessarily broader than claims based solely on rights originating exclusively from the contract." *Id*. at 439. In these instances, the Court has applied the but-for causal standard to forum-selection clauses that contain the phrase "any dispute arising out of" and explained that a party's claims "arise out of" its agreement when "but for the agreement, [the party] would have no basis to complain." *Id*. at 438 (quoting *In re Lisa Laser*, 310 S.W.3d at 886). We also must acknowledge the Court's prohibition of encouraging artful pleading:

14

> A plaintiff could characterize its claim as a statutory or common-law tort claim to evade the agreed-upon forum despite essential allegations that are "inextricably enmeshed" or "factually intertwined" with the underlying contract. In such cases, the forum-selection clause should be denied force only "if the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract.

*Id*. at 440.

With these principles in mind, we review the allegations supporting Alterna America's claims to determine whether (1) the existence or terms of the Agreement and the Promissory Notes constitute operative facts in the dispute, and (2) Alterna America would not be aggrieved "but for" the Agreement and the Promissory Notes. *Id*. In doing so, we conclude that a common-sense examination of the forum-selection clauses and the claims asserted leaves no question that Alterna America's claims fall within the clauses' scope.

Alterna America bases its TUFTA claims on allegedly fraudulent transfers of the borrowed funds that it alleges Relators made with the intent to hinder, delay, or defraud Alterna Mexico, and which were made without receiving equivalent value in exchange for the transfers, to avoid their obligations through insider involvement, concealment, and resulting insolvency. The TUFTA claims specifically allege that the alleged fraudulent transfers occurred "at a time when it intended to incur debts beyond its ability to pay as they came due[,]" and "were the objects of an agreement amongst Defendants Gardea, Fontes, and the LLC Defendants who worked together to carry out the above-described fraudulent transfers." The fraud claims alleged that Gardea Ruiz "represented to Alterna Mexico that they were borrowing funds in good faith, and would use the borrowed funds in the course of the legitimate business of Nueces Fink; when in fact, [Gardea Ruiz] never intended to repay those funds, and disbursements made to Nueces Fink were used by [Gardea Ruiz] for other purposes that were not in the interest of the business of Nueces Fink," in violation of the Agreement. The fraud claims further allege that Gardea Ruiz intended to make Nueces Fink

15

insolvent by moving the borrowed funds as they became due to other entities in another country, which was all "the object of an agreement between [Gardea Ruiz] and Nueces Fink . . . who worked together to commit . . . fraud." And the fraudulent inducement claims similarly allege that Gardea Ruiz misrepresented that he would repay the borrowed funds, when he actually intended to divest the funds to hide assets and become insolvent, and falsely represented that the borrowed funds would be used in the course of the business of Nueces Fink, in violation of the Agreement, which was all "the object of an agreement between [Gardea Ruiz] and Nueces Fink . . . who worked together to commit . . . fraud."

All of the alleged wrongs in the petition concern the borrowed funds disbursed to Nueces Fink and Gardea Ruiz under the Promissory Notes, which were an extension to the line of credit in the Agreement. The alleged wrongs arise from the performance and enforcement of the Agreement and the Promissory Notes—the obligation to repay the borrowed funds under those instruments, and the conduct Relators allegedly undertook to hide the funds and avoid repayment in violation of the agreed terms. The dispute shows a but-for relationship to the Agreement and Promissory Notes. But-for these agreements, no dispute would exist about the conduct Alterna America contends Relators engaged in to violate the agreed terms, which it seeks to enforce, and which without, it would have no basis to assert the tort claims. "Pleading alternative noncontractual theories of recovery will not alone avoid a forum-selection clause if those alternative claims arise out of the contractual relations and implicate the contract's terms." *My Café–CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 866 (Tex. App.—Dallas 2003, no pet.) (citing *Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 72–73 & n.7 (Tex. App.—Dallas 1996). The Texas Supreme Court has stated: "Legal theories and causes of action are not controlling. Rather, we avoid slavish adherence to a contract/tort distinction, because doing otherwise would allow a

litigant to avoid a forum-selection clause with artful pleading." *Pinto Tech. Ventures*, 526 S.W.3d at 437 (cleaned up).

We also note that the tort claims "involve the same operative facts that would be implicated in a parallel breach-of-contact claim, had one been pursued." *Id*. at 441. The Agreement and Promissory Notes were entered into to establish the terms in providing a line of credit and Nueces Fink and Gardea Ruiz's obligation of repayment. The tort claims seek enforcement and performance of these terms and obligations, and a contract claim would involve the same operative facts as statutory and common law tort claims addressing these matters. The factual allegations of Alterna America's live pleading give rise to the tort claims and are integral to the dispute's relations. We cannot ignore that Alterna America's alleged grievances arise from the existence of the relationship, the terms, and the obligations of the Agreement and the Promissory Notes.

For these reasons, we hold that the dispute at issue arises out of the Agreement and the Promissory Notes, and the violation of TUFTA and conspiracy to violate TUFTA, common law fraud and conspiracy to commit fraud, and fraud in the inducement and conspiracy to commit fraud in the inducement claims fall within the Promissory Notes' forum-selection clauses.

### B. The nonsignatories may invoke the forum-selection clauses.

It is undisputed that Gardea Ruiz was a signatory and that he may invoke the forum-selection clauses. But we must consider whether Fontes and the LLC Defendants, as nonsignatories, may also enforce the forum-selection clauses.

"As a general rule, neither an arbitration clause nor a forum-selection clause may be invoked by a nonparty to the contract." *Gespa*, 705 S.W.3d at 386. However, a party's nonsignatory status does not automatically foreclose invocation of that forum-selection clauses against Alterna America's claims. As the Texas Supreme Court has observed in the arbitration context, "sometimes a person who is not a party to the agreement can compel arbitration with

17

someone who is . . . ." *Meyer v. WMCO–GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006) (citing *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761–62 (Tex. 2006) (orig. proceeding) (per curiam)). We have also observed that "[a] person who has agreed to resolve disputes with one party in a particular forum may be required in some circumstances to resolve related disputes with other parties in the same forum." *Gespa*, 705 S.W.3d at 386.

Alterna America argues that Fontes and the LLC Defendants cannot invoke the forum-selection clauses because they did not sign either the Agreement or the Promissory Notes and were not named as third party beneficiaries. Multiple theories may allow nonsignatories to enforce a forum-selection clause, but Fontes and the LLC Defendants assert only the direct-benefits estoppel theory.[6]

"A non-signatory may invoke the direct benefits estoppel exception to enforce an arbitration clause contained in a contract that contains other terms on which the signatory plaintiff must rely to prosecute its claims." *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 831 (Tex. App.—Dallas 2013, no pet.). "As analogously applied to arbitration, '[a] non-signatory may invoke the direct benefits estoppel exception to enforce an arbitration clause contained in a contract that contains other terms on which the signatory plaintiff must rely to prosecute its claims.'" *Gespa*, 705 S.W.3d at 386 (citing *VSR Fin. Servs.*, 409 S.W.3d at 831). Direct-benefits estoppel applies when a signatory's claim against a nonsignatory "references or presumes the existence of the written agreement" containing the clause. *Smith v. Kenda Cap., LLC*, 451 S.W.3d 453, 458 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

---

[6] Alterna America argues that Fontes and the LLC Defendants cannot invoke the forum-selection clauses because "equitable estoppel cannot be based solely on allegations of substantially interdependent and concerted misconduct alone." However, estoppel based on concerted misconduct is distinct from direct-benefits estoppel, and Alterna America relies only on direct-benefits estoppel. We do not consider whether Fontes and the LLC Defendants may invoke the forum-selection clauses based on concerted misconduct estoppel.

Here, Alterna America asserted violation of TUFTA and conspiracy to violate TUFTA against Fontes and the LLC Defendants. These claims necessarily reference and presume the existence of the Agreement and Promissory Notes containing the forum-selection clauses. These claims depend on the existence of the Agreement and the Promissory Notes. Alterna America responds that direct-benefits estoppel does not apply because Fontes and the LLC Defendants "are not tied to the contract but are instead alleged to be in receipt of fraudulent transferred funds" and because they are "'complete stranger[s] to his contract' whose only connection to the matter is an alleged conspiracy to fraudulently transfer money owned to Alterna out of Mexican and help Gardea Ruiz commit torts." However, the "direct benefits estoppel analysis focuses on whether a contract containing the clause at issue also includes other terms on which the signatory plaintiff must rely to prosecute its claims." *Smith*, 451 S.W.3d at 460.

The TUFTA claims rest on the alleged fraudulent transfers of the borrowed funds— transfers Alterna America alleges were made with the intent to hinder, delay, or defraud Alterna America to hide the funds through insider involvement, concealment, a lack of reasonably equivalent value, and resulting insolvency. Alterna America specifically pleaded that the transferred funds were "owed to Alterna Mexico" and that these "transactions were only for the purpose of moving money that was owed to Alterna Mexico from Nueces Fink, and hiding it from Alterna Mexico." These claims against Fontes and the LLC Defendants presume the existence of the Agreement and the Promissory Notes, and Alterna America must rely on those instruments to prosecute its claims because the alleged fraudulent transfers to hide the funds and avoid repayment only matters if Alterna America had a right to repayment of the borrowed funds. Simply put, the contractual right on which Alterna America relies comes directly from the terms of the Agreement and Promissory Notes on which Alterna America must rely to prosecute its claims. Any liability

of Fontes and the LLC Defendants arises out of the contractual relationship created by the Agreement and Promissory Notes and the terms and obligations therein. *See Gespa*, 705 S.W.3d at 387 (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding) (The alleged liability must "arise[] solely from the contract or must be determined by reference to it.")).

The TUFTA claims asserted against Fontes and the LLC Defendants could not stand independently without the Agreement and the Promissory Notes. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527–28 (Tex. 2015) (providing that direct benefits estoppel applies when the claim "'depend[s] on the existence' of the contract and be unable to 'stand independently' without the contract.") (internal citation omitted). "[W]hether claims seek a direct benefit from a contract turns on the substance of the claim, not artful pleading . . . [A] claim is brought in contract if liability arises from the contract, while a claim is brought in tort if liability is derived from other general obligations imposed by law." *In re Lisa Laser*, 310 S.W.3d at 884 (citing *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex. 2009) (orig. proceeding) (per curiam)). Because the claims against Fontes and the LLC Defendants presume the existence of the Agreement and the Promissory Notes, the circumstances meet the criteria for allowing Fontes and the LLC Defendants to enforce the forum-selection clauses against Alterna America under direct-benefits estoppel, and suit in El Paso was precluded for these claims against Relators, including Fontes and the LLC Defendants.

### C. Alterna America failed to clearly show that the trial court's refusal to enforce the forum-selection clause would be permissible.

Having concluded that the claims fall within the scope of the forum-selection clauses and that Fontes and the LLC Defendants may invoke the clauses under direct-benefits estoppel, Alterna America bore the burden to show that the trial court's refusal to enforce the forum-selection clauses would be permissible. *In re ADM*, 304 S.W.3d at 375. Forum-selection clauses are "presumptively

valid" and courts "must enforce" them "unless the party opposing enforcement clearly shows" that (1) enforcement is unreasonable or unjust, (2) the clause is invalid because of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the contractually selected forum would be "seriously inconvenient" for trial.[7] *Rieder v. Woods*, 603 S.W.3d 86, 93 (Tex. 2020); *In re AIU Ins. Co.*, 148 S.W.3d 109, 112 (Tex. 2004) (orig. proceeding). Enforcement of a forum-selection clause is "mandatory" unless the resisting party "clearly shows" one of the established exceptions. *Phx. Network Techs., Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 613–14 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see In re ADM*, 304 S.W.3d at 375–76. As the resisting party, Alterna America carried a "heavy burden" to make this showing. *In re ADM*, 304 S.W.3d at 375.

Alterna America argues that enforcement would be unreasonable and unjust because such a result "would create precedent that incentivizes fraudulent international asset transfers;" because dismissal of its TUFTA claims would "essentially extinguish [its] statutory right to seek injunctive relief, in contravention to Texas public policy;" and because "litigation in the courts of Monterrey, Mexico would pose serious inconvenience." However, Alterna America presented no evidence in the trial court on any of these grounds and has not satisfied its heavy burden.[8]

Alterna America premises its argument that enforcement would incentivize fraud solely on unproven, unsupported allegations that Relators committed fraudulent acts. As to whether enforcement would contravene public policy, Texas courts, including the Texas Supreme Court, have rejected this position in the forum-selection context, stating that a party's inability to assert a

---

[7] Alterna America does not challenge the validity of the forum-selection clauses.

[8] We likewise reject Alterna America's request that we deny the writ under the doctrine of unclean hands. Alterna America relies on wholly unproven allegations. *See San Miguel v. City of Windcrest*, 40 S.W.3d 104, 110–11 (Tex. App.—San Antonio 2000, no pet.) (refusing to invoke the doctrine of unclean hands without evidence of inequitable behavior and stating that though "bad faith" was alleged in petition, "Pleadings, however, are not evidence.").

statutory claim does not, by itself, establish a public policy basis to deny enforcement of a forum-selection clause. "[A]bsent a Texas statute requiring suit to be brought in Texas, the existence of Texas statutory law in an area did not establish such Texas public policy as would negate a contractual forum-selection provision."). *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 234 (Tex. 2008) (orig. proceeding) (per curiam). As to inconvenience, Alterna America contends that litigation in the selected forum would seriously inconvenience it because Gardea Ruiz, Fontes, and the LLC Defendants are located in the United States, but such conclusory statements, without more, do not suffice. *See In re ADM*, 304 S.W.3d at 375–76 (finding that conclusory statements regarding health concerns as a basis for inconvenience, without support in the record, do not suffice). "When inconvenience in litigating in the chosen forum is foreseeable at the time of contracting, the challenger must 'show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Id.*; (citations omitted); *see also In re Lyon Fin. Servs.*, 257 S.W.3d at 234 ("If merely stating that financial and logistical difficulties will preclude litigation in another state suffices to avoid a forum-selection clause, the clauses are practically useless.").

Nothing in the record supports Alterna America's contentions, and Alterna America has not met its heavy burden. Alterna America has failed to clearly show that the trial court's refusal to enforce the forum-selection clauses would be permissible.

## IV. CONCLUSION

We hold that Alterna America's claims against Relators fall within the scope of the Promissory Notes' forum-selection clauses. The trial court abused its discretion by denying Relators' combined plea to the jurisdiction and motion to dismiss on the claims asserted against Relators. We conditionally grant the petition for writ of mandamus and direct the trial court to

vacate its June 10, 2025 order and dismiss Alterna America's claims. We are confident the trial court will comply, and the writ will issue only if it does not. We further order the stay imposed by our August 12, 2025 order lifted.

MARIA SALAS MENDOZA, Chief Justice

July 8, 2026

Before Salas Mendoza, C.J., Palafox, and Soto, JJ.